UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

GARY HOLSTEIN
*on behalf of the Estate of*
Luke Tyler Holstein,

        Plaintiff,

v.                                                          CIVIL ACTION NO.  5:24-cv-151

BETSY JIVIDEN
*individually as a Former Employee of the*
*West Virginia Division of Corrections and Rehabilitation*, and
MICHAEL FRANCIS
*individually as a Former Employee of the*
*West Virginia Division of Corrections and Rehabilitation,* and
JUSTIN DAVIS
*individually as an employee of the West Virginia Division of*
*Corrections and Rehabilitation,* and
VALERIE BROWN
*individually as an employee of the West Virginia Division of*
*Corrections and Rehabilitation,* and
JOHN/JANE DOE CORRECTIONAL OFFICERS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

        Pending are Motions to Dismiss filed by Defendant Betsy Jividen [ECF 52], on November 14, 2024, Defendant Michael Francis [ECF 54], on November 18, 2024, and Defendants Justin Davis and Valerie Brown [ECF 56], on November 20, 2024. Plaintiff Gary Holstein ("Plaintiff Holstein") responded to each Motion [ECF 58, 59, 61], to which Defendants Francis, Davis, and Brown filed their respective replies [ECF 62, 63]. Defendant Jividen did not file a reply. The matters are ready for adjudication.

I.

On March 25, 2022, Luke Tyler Holstein was booked at Southern Regional Jail ("SRJ"). [ECF 50 at ¶ 32]. Upon his arrival, Defendants Justin Davis and Valarie Brown completed "a pat search and property search" and "body scan" of Mr. Holstein. [*Id.* at ¶ 33]. The body scan revealed Mr. Holstein had "an unidentified object below the scrotum." [*Id.* at ¶ 34]. According to the Second Amended Complaint, "Policy Directive 308.13 Full Body Security Scanning System" states, "If suspected contraband is detected on a scan image, the operator will summon the Shift Commander to review the image and verify the suspected presence of contraband." [*Id.* at ¶ 55 (internal quotation marks omitted)]. "[I]f the contraband is concealed internally (body cavity) the inmate will be asked to voluntarily remove the contraband." [*Id.* (internal quotation marks omitted)]. If "an inmate . . . does not voluntarily remove the suspected contraband, the inmate is to be placed in a 'dry cell'" until the inmate has "a bowel movement and [is] rescanned . . . ." [*Id.* at ¶¶ 56, 58]. The Complaint alleges Defendants failed to follow policy directives regarding Mr. Holstein. [*Id.* at ¶¶ 57–63].

At approximately 4:35 p.m., on March 26, 2022, one of Mr. Holstein's cellmates called Tower Officer Ryan Walls and reported that Mr. Holstein "was laying face down and unresponsive, with no pulse, and his face being purple." [*Id.* at ¶ 37]. Several correctional officers and medical personnel responded to the scene and began life saving measures. [*Id.* at ¶¶ 38–48]. Shortly thereafter, Emergency Medical Services ("EMS") EMS arrived and transported Mr. Holstein to "Beckley Appalachian Regional Hospital, where he was pronounced deceased around [5:38 p.m.] due to cardiac arrest." [*Id.* at ¶¶ 48–49].

On March 25, 2024, Dustin Boggs instituted this action on behalf of Mr. Holstein's Estate against several defendants, including Defendant Jividen, the Former Commissioner of the

West Virginia Division of Corrections and Rehabilitation ("WVDCR"), Defendant Francis, the Former Superintendent of the WVDCR, and Defendants Davis and Brown, who were Correctional Officers at SRJ at the time of the alleged incident. [ECF 1]. On November 7, 2024, Mr. Boggs was terminated from the action and replaced by Plaintiff Holstein. [ECF 49]. That same day, Plaintiff Holstein filed a Second Amended Complaint ("Complaint"), alleging the following claims: (1) Count I – "Deliberate Indifference under 42. U.S.C. § 1983," (2) Count II – "Violations of the West Virginia State and U.S. Constitutions," (3) Count III – "Negligence and Violations of Constitutional Rights," (4) Count IV – "Negligent Hiring," (5) Count V – "Negligent Supervision and Training," (6) Count VI – "Negligent Retention," and (7) Count VII – "Fourteenth Amendment Violations Under 42 U.S.C. § 1983 (Deliberate Indifference to serious Medical Needs)." [ECF 50 at ¶¶ 74–127]. Defendants now move to dismiss the Complaint pursuant to *Federal Rule of Civil Procedure* 12(b)(6). [ECF 52, 54, 56].

## II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now

settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

4

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555–56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

#### A.     42 U.S.C. § 1983

Generously construed, Plaintiff Holstein alleges violations of the Fourteenth Amendment using the remedy provided by Congress in 42 U.S.C. § 1983 (Counts I, II, III, and VII). [ECF 50 at ¶¶ 74–81, 113–27]. He claims Defendants were deliberately indifferent to Mr. Holstein's medical needs for failing to properly provide necessary and reasonable medical treatment. [*Id.* at ¶ 116]. Specifically, Plaintiff Holstein claims "Defendants did nothing to prevent [Mr.] Holstein from ingesting illegal substances and did nothing to further identify the object that alerted the body scanner" as required under policy directives. [*Id.* at ¶ 53].

"The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments.'" *Anderson v. Kingsley*,

877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment "has no application" where there has "been no formal adjudication of guilt against [an incarcerated person] at the time he required medical care." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015); *Short v. Hartman*, 87 F.4th 593, 609–10 (4th Cir. 2023). A pretrial detainee may, however, bring a deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment. *Short*, 87 F.4th at 611 (citing *Kingsley*, 576 U.S. at 398. To state such a claim, a pretrial detainee must plead the following:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short*, 87 F.4th at 611.

A pretrial detainee need not "show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.*; *see also Jenkins v. Woodard*, 109 F.4th 242, 249 n.3 (4th Cir. 2024). Rather, "it is sufficient that the plaintiff show that . . . the defendant should have known of that condition and that risk, and acted accordingly." *Short*, 87 F.4th at 611. It is not enough for a plaintiff to only show the defendant "negligently or accidentally failed to do right by the detainee." *Id.* at 611–12; *see also Kingsley*, 576 U.S. at 396.

Free from the constraints of the subjective showing required under the Eighth Amendment, the Complaint nonetheless fails to plead a plausible Fourteenth Amendment deliberate indifference claim against Defendants. Assuming Mr. Holstein had a medical condition or injury posing a substantial risk of serious harm, Plaintiff Holstein omits any allegations

6

Defendants intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed. At most, Plaintiff Holstein's claims regarding Defendant Brown's failure to identify the "unidentified object" amount to mere negligence. He also includes no facts explaining how Mr. Holstein suffered harm attributable to those Defendants. *See Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023) ("requiring specific factual allegations for each defendant gives fair notice to that defendant of the plaintiff's claim and the underlying factual support."). Those omissions alone, under the *Twombly/Iqbal* standard, doom Plaintiff Holstein's claim.

While Plaintiff Holstein may proceed on a theory of supervisory liability in regard to Defendants Jividen and Francis, "he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (cleaned up) (recognizing that "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care"). There are no allegations, however, either Defendants Jividen or Francis knew of, much less condoned, any alleged failure to summon the Shift Commander or place Mr. Holstein in a "dry cell."

Nor is there any reference to prior incidents in which Defendants Davis and Brown flouted policy directives which then went unaddressed by Defendants Jividen or Francis. Rather, Plaintiff Holstein simply alleges, "the bringing of illegal drugs and contraband into Defendants' facilities was at epidemic levels because of the chronic understaffing of Defendant's facilities and lack of control over the screening process of persons entering Defendant's facilities and failure to enforce its own contraband policies." [ECF 50 at ¶ 28]. Such generalized allegations are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citation omitted). Allegations must be sufficient to "permit the court to infer more than the mere possibility of misconduct" based

upon "its judicial experience and common sense." *Iqbal*, 550 U.S. at 679. The only allegations against Defendants Jividen and Francis are precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" and "legal conclusions" that *Iqbal* forbids. *Iqbal*, 556 U.S. at 678).

Accordingly, the Court **GRANTS** the Motions to Dismiss and Counts I, II, III, and VII are **DISMISSED** without prejudice to repleading in accordance with the *Federal Rules of Civil Procedure*.[1]

**B.　State Law Negligence Claims**

Defendants seek dismissal of Plaintiff Holstein's claims for negligence (Count III), negligent hiring (Count IV), negligent supervision and training (Count V), and negligent retention (Count VI) based on (1) insufficiency, and (2) qualified immunity. [ECF 53, 55, 57].

Under West Virginia law, a public officer acting within the scope of employment is immune from suit for actions taken in any discretionary function. *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 505, 766 S.E.2d 751, 764 (2014). West Virginia treats the general functions of state correctional officers, along with the broader duties of employee training, supervision, and retention, as discretionary *Id.* at 509, 766 S.E.2d at 768 ("[W]e find that D.H.'s general functions as a correctional officer, like most law enforcement officers, are broadly characterized as discretionary, requiring the use of his discretionary judgments and decisions."). However, immunity does not attach to discretionary actions or omissions if made "in violation of a clearly established statutory or constitutional rights or laws of which a reasonable person would

---

[1] Although Counts II and III also assert violations of the Constitution of West Virginia, Plaintiff Holstein makes no mention of the particular articles, sections, or clauses Defendants allegedly violated. The claims are thus practically unpled. [ECF 50 at ¶¶ 77–81]. Accordingly, Mr. Holstein's state constitutional claims (Counts II and III) are **DISMISSED WITHOUT PREJUDICE**.

have known, or [which] are otherwise fraudulent, malicious, or oppressive." *Id.* at 507.

In its recent decision in *West Virginia Dep't of Hum. Servs. v. David B., Next Friend of J.B.*, the Supreme Court of Appeals summarized the governing standards for the state variety of qualified immunity:

> West Virginia applies two standards to determine if a state agency, agent, official, or employee is protected by qualified immunity. First, "[a] litigant may pierce the shield of qualified immunity by showing that a government official has violated a clearly established statutory or constitutional right." Second, a litigant may pierce the shield of qualified immunity by showing that the government official's, employee's, or agent's acts or omissions were *fraudulent, malicious, or oppressive*. The first test is based upon federal law, while the second is in addition to the federal law-based test.

No. 23-275, 2024 WL 4784904, at *5 (W. Va. Nov. 14, 2024) (emphasis added) (cleaned up); *see also Maston v. Wagner*, 236 W. Va. 488, 781 S.E.2d 936, 940 (2015); Syl. Pt. 5, in part, *W. Va. Div. of Nat. Res. v. Dawson*, 242 W. Va. 176, 190, 832 S.E.2d 102, 116 (2019); Syl., in part, *State v. Chase Sec., Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992).

In view of the pleading deficiencies earlier mentioned, Plaintiff Holstein has not presently shown that particular Defendants violated a clearly established statutory or constitutional right. In any event, it appears the Defendants rely principally upon the second prong earlier quoted. The question is thus whether Plaintiff Holstein has pled any acts or omissions by the subject Defendants that were fraudulent, malicious, or oppressive. He has utterly failed to do so. Defendants are thus entitled to qualified immunity for the acts and omissions related to Plaintiff Holstein's negligence claims. *See W. Va. Dep't of Hum. Servs. v. A.R.*, 249 W. Va. 590, 600, 900 S.E.2d 16, 26 (2024) (finding plaintiff's general allegation of defendant's failure to follow policies and protocols warranted dismissal for qualified immunity purposes inasmuch as it failed to show Defendant "did or failed to do something that it would have reasonably understood to be unlawful."). Inasmuch as qualified immunity applies to the negligence claims, the Court need not

address the sufficiency of the pleading as to those claims. The Court would note, however, the claims appear largely unsupported by necessary factual allegations.

The Court **GRANTS** the Motions to Dismiss and Counts III through VI are **DISMISSED** without prejudice to repleading in accordance with the *Federal Rules of Civil Procedure*.

### IV.

As noted, the operative pleading is the Second Amended Complaint. Despite three prior tries, there remain fundamental pleading deficiencies. In the event Plaintiff Holstein desires to pursue yet another pleading amendment, his counsel should devote closer scrutiny to the requirements of *Twombly* and its progeny. General allegations of wrongdoing, such as chronic jail understaffing and the illegal introduction of controlled substances into the correctional environment, will not, standing alone, suffice. Factual pleading with some level of particularity, not just as to wrongdoing but also as to causation, are essential.

### V.

Based upon the foregoing discussion, the Court **GRANTS** the Motions to Dismiss [**ECF 52, 54, 56**] and **DISMISSES WITHOUT PREJUDICE** Plaintiff Holstein's Complaint. Plaintiff Holstein may replead the dismissed claims on or before **August 1, 2025**.

The Clerk is **DIRECTED** to transmit a copy of this written opinion and order to all counsel of record and to any unrepresented party.

ENTER:   July 14, 2025

Frank W. Volk
Chief United States District Judge

10